UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UBS FINANCIAL SERVICES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:11cv437 (MRK) |
| | : | |
| PETER N. JUNGGREN, JR., | : | |
| | : | |
| Defendant. | : | |

## RULING AND ORDER

Defendant Peter N. Junggren, Jr. is a former employee of Plaintiff UBS Financial Services, Inc. ("UBS Financial"). Mr. Junggren served as a financial advisor at UBS Financial from January 20, 2006 through September 30, 2009. He then served as a wealth strategy associate at UBS Financial from October 1, 2009 through March 15, 2011, when he left UBS Financial and took a position at Morgan Stanley Smith Barney, LLC ("Morgan Stanley Smith Barney"). UBS Financial alleges that Mr. Junggren took confidential information about 229 UBS Financial clients with him to Morgan Stanley Smith Barney, and that he has been using that confidential information to solicit clients away from UBS Financial, in violation of several agreements between Mr. Junggren and UBS Financial as well as Connecticut statutory and common law. A Financial Industry Regulatory Authority ("FINRA") arbitration panel will ultimately decide the merits of UBS Financial's claims against Mr. Junggren.

Pending before the Court is UBS Financial's Motion for Emergency Relief and Immediate Temporary Restraints Pending Expedited Arbitration Before FINRA [doc. # 4] pursuant to Rule 65 of the *Federal Rules of Civil Procedure*. There is no dispute that while the

parties have agreed to arbitrate the merits of their dispute before a FINRA arbitration panel, this Court has authority to issue preliminary relief pending arbitration. *See American Express Financial Advisors, Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998) ("[W]here, as here, courts do have the authority to consider the merits of requested injunctions a contractual provision stating that plaintiffs may seek such relief in a court of competent jurisdiction amply reaffirms what the law already directs.").[1] The Court ordered expedited briefing on UBS Financial's motion and has now carefully considered the parties' arguments. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the motion.

UBS Financial's motion indicates that it seeks both a temporary restraining order and a preliminary injunction against Mr. Junggren pending a decision on the merits of its claims from the FINRA arbitration panel. However, during the on-the-record telephone status conference held on March 23, 2011, counsel for UBS Financial indicated that because of the expedited nature of the proceeding before the FINRA arbitration panel, it may ultimately not be necessary for this Court to hold a preliminary injunction hearing. The Court therefore DENIES IN PART, without prejudice, USB Financial's motion insofar as it seeks a preliminary injunction against Mr. Junggren.[2] USB Financial may file a renewed motion for a preliminary injunction when and if it becomes necessary to seek a preliminary injunction, but should include in any request for a

---

[1] The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 because UBS Financial alleges that the amount in controversy exceeds $75,000, exclusive of interest and costs; that Mr. Junggren is a citizen of Connecticut; and that UBS Financial is a citizen of Delaware and of New Jersey. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010) (holding that under § 1332, a corporation is a citizen of the state "where the corporation's high level officers direct, control, and coordinate the corporation's 'nerve center'" – typically, the state where the corporation's headquarters is located.)

[2] The Court recognizes that temporary restraining orders are usually granted for the purpose of "preserv[ing] the rights of the parties until a hearing can be had" regarding the need for a preliminary injunction. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2941, at 33-34. However, the Court sees no need to schedule a hearing when the parties have agreed to an expedited arbitration that may conclude before the limited period of time Rule 65(b) allows for temporary restraining orders to remain in place expires.

preliminary injunction a proposed schedule for a preliminary injunction hearing, including discovery.

The parties agree that federal law governs the availability of injunctive relief in this case.[3] In the Second Circuit, the standard for issuance of a temporary restraining order is the same as the standard for issuance of a preliminary injunction. *See Romag Fasteners, Inc. v. J.C. Penney, Inc.*, No. 3:07cv1667 (JBA), 2007 WL 4225792, at *3 (D. Conn. Nov. 28, 2007) (citing *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005)). A party seeking a temporary restraining order or a preliminary injunction "must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party. *Mullins v. City of New York*, 626 F.3d 47, 52-53 (2d Cir. 2010); *see, e.g.*, *Sequoia Sciences, Inc. v. Wood*, No. 3:05cv1908 (MRK), 2006 WL 860475, at *1. UBS Financial argues that it will suffer irreparable harm absent injunctive relief; that it is likely to succeed on the merits before the FINRA arbitration panel; and alternatively, that it has raised sufficiently serious questions regarding the merits and that the balance of harms tips decidedly in its favor. Mr. Junggren contests all three of USB Financial's arguments.

The Court begins with the irreparable harm issue. The Court agrees with UBS Financial that it will suffer irreparable harm if this Court does not prevent Mr. Junggren from continuing to use the allegedly confidential information he obtained from UBS Financial in attempt to persuade its clients to take their accounts to Morgan Stanley Smith Barney. *See North Atlantic*

---

[3] There does, however, appear to be a dispute regarding the governing substantive law. UBS Financial plans to assert a number of Connecticut law claims against Mr. Junggren before the FINRA arbitration panel, but Mr. Junggren argues in opposition to the pending motion that "[t]his dispute is governed by New York law." Mem. in. Opp. [doc. # 17] at 13. Whether the Connecticut or New York substantive law applies is ultimately irrelevant to this Court's decision.

*Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999); *Sequoia*, 2006 WL 860475, at *2. Mr. Junggren has attempted to characterize this action as an action to enforce a restrictive covenant against a former employee, *see* Mem. in Opp. [doc. # 17] at 13-15. However, the Court is persuaded, in essence, this is actually a trade secrets case. UBS Financial objects not to the undisputed fact that Mr. Junggren is currently working for a competitor firm, but to the alleged facts that Mr. Junggren took proprietary customer information that he promised to keep secret and that he is using that information to poach customers from UBS Financial. *See* Mem. in Support [doc. # 4-1] at 7. UBS Financial plans to assert before the FINRA arbitration panel that Mr. Junggren is acting in violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50 *et seq.* The Second Circuit holds "that 'loss of trade secrets cannot be measured in money damages' because '[a] trade secret once lost is, of course, lost forever.'" *North Atlantic Instruments*, 188 F.3d at 49 (quoting *FMC Corp v. Taiwan Tainan Giant Industrial Co., Ltd.*, 720 F.2d 61, 63 (2d Cir. 1984) (per curiam)) (alteration in original). This Court must follow that holding. *See Sequoia*, 2006 WL 860475, at *2.

Although UBS Financial argues that it is likely to succeed on the merits, the Court finds it unnecessary to reach that argument. Mr. Junggren recognizes that there are two central issues in this case. The first is whether he was a "Registered Representative" of UBS Financial when he left that firm and went to work for Morgan Stanley Smith Barney. *See* Mem. in Opp. [doc. # 17] at 3-4; Reply Mem. [doc. # 20] at 4-5. If he was a Registered Representative, then he was allowed to take with him to Morgan Stanley Smith Barney a list of clients serviced by his team, and if there was a dispute about the client list he compiled and took with him, he could not be held liable so long as he acted in good faith. *See* Mem. in Opp. [doc. # 17] at 10-13. Because Mr. Junggren apparently concedes that the information he took about 229 UBS Financial clients

included information about 105 UBS Financial clients who were not serviced by his team, *see* Mem. in Opp. [doc. # 12] at 12; Reply Mem. [doc. # 20] at 1, the second central issue is whether Mr. Junggren acted in good faith in taking the information regarding those 105 UBS Financial clients. Although there appear to be a number of good arguments that Mr. Junggren can make before the FINRA arbitration panel, UBS Financial's arguments are also quite serious and satisfy the alternative standard of demonstrating sufficiently serious questions going to the merits to make them a fair ground for litigation.

It is therefore necessary to consider whether the balance of harms tips decidedly in UBS Financial's favor. The Court agrees with UBS Financial that the harms it will suffer if a temporary restraining order is not issued decidedly outweigh any harms that Mr. Junggren may suffer as a result of such order. If UBS Financial is correct about the merits of this case, then Mr. Junggren's use of information about *any* UBS Financial clients is unlawful. Even Mr. Junggren concedes that he took information about some UBS Financial clients that he was not supposed to take. Therefore, even if Mr. Junggren proves that he is a Registered Representative of UBS Financial, he may not be able to prove that he acted in good faith. The harm that UBS Financial will suffer during the interim before the FINRA arbitration panel can determine this dispute is, as the Second Circuit has repeatedly acknowledged, a harm that is immeasurable and cannot be fully remedied. *See North Atlantic Instruments*, 188 F.3d at 49. Mr. Junggren, on the other hand, will only be harmed insofar as he is temporarily prohibited from contacting a limited group of former UBS Financial clients. The parties' agreement to submit to expedited arbitration ensures that such harm to Mr. Junggren, if it occurs, will not last long. The Court emphasizes that UBS Financial *has not* asked the Court to stop Mr. Junggren from working for Morgan Stanley Smith Barney in generally – it has only asked that Mr. Junggren cease communications with the 229

current and former UBS Financial clients about whom Mr. Junggren took information when he left the firm.

Having found that UBS Financial has demonstrated that it will suffer irreparable harm absent injunctive relief, that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in its favor, the Court finds that UBS Financial is entitled to injunctive relief. *See Mullins v. City of New York*, 626 F.3d at 52-53. The Court will separately enter a Temporary Restraining Order against Mr. Junggren; the purpose of that Temporary Restraining Order will be to maintain the *status quo* that would have existed if Mr. Junggren had not taken a customer list from UBS Financial to Morgan Stanley Smith Barney. The Temporary Restraining Order will require the following:

(1) UBS Financial shall provide Mr. Jungren and Morgan Stanley Smith Barney with the names of the 229 UBS Financial clients that Mr. Junggren took with him to Morgan Stanley Smith Barney **by noon on March 31, 2011.** UBS Financial shall also serve copies of the Court's Ruling and Order granting the Motion for Emergency Relief and Immediate Temporary Restraints Pending Expedited Arbitration Before FINRA [doc. # 22] and of this Temporary Restraining Order on Mr. Junggren and on Morgan Stanley Smith Barney in accordance with law **by noon on March 31, 2011.**

(2) As soon as UBS Financial provides the list of UBS Financial clients to Mr. Jungren and Morgan Stanley Smith Barney as set forth in paragraph (1), Mr. Junggren and all persons acting in concert with him, including any other officers, employees, agents, or other representatives of Morgan Stanley Smith Barney, shall immediately cease from directly or indirectly soliciting business from any of the 229 listed UBS Financial clients.

(3) As soon as UBS Financial provides the list of UBS Financial clients to Mr. Jungren and Morgan Stanley Smith Barney as set forth in paragraph (1), Mr. Junggren and all persons acting in concert with him, including any other officers, employees, agents, or other representatives of Morgan Stanley Smith Barney, shall immediately cease from directly or indirectly using, disclosing, or transmitting any of the information about the 229 listed UBS Financial clients that Mr. Junggren took with him from UBS Financial.

(4) As soon as possible after UBS Financial provides the list of UBS Financial clients to Mr. Jungren and Morgan Stanley Smith Barney as set forth in paragraph (1), Mr. Junggren shall turn over to his counsel over all originals, copies, or other reproductions of documents from USB Financial related to the 229 listed UBS Financial clients.

(5) After Mr. Junggren turns over the documents set forth in paragraph (4) to his counsel, Mr. Junggren's counsel shall hold those documents in escrow and shall not permit Mr. Junggren or any person acting in concert with him, including any other officer, employee, agent, or other representative of Morgan Stanley Smith Barney – but not including Mr. Jungren's counsel – to access those documents.

(6) This Temporary Restraining Order shall expire **on April 13, 2011**, though the Court may extend this Temporary Restraining Order for an additional 14 days if UBS Financial moves for an extension and shows good cause for such an extension. Any motion for extension of this Temporary Restraining Order must include information about the scheduling for the FINRA arbitration panel hearing.

IT IS SO ORDERED.

/s/        Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: March 30, 2011.**